## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

DENNIS FLUECK,

        Plaintiff,                        Case No. 1:23-cv-486

v.                                  Hon.

T-MOBILE USA, INC.,

        Defendant.

---

Warner Mendenhall (0070165)
Mendenhall Law Group
Attorneys for Plaintiff
190 North Union St., Suite 201
Akron, OH 44304
330.535.9160; f 330.762.9743
warner@warnermendenhall.com

Noah S. Hurwitz (P74063)
HURWITZ LAW PLLC
Attorneys for Plaintiff
340 Beakes St., Ste. 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com
(Pending *Pro Hac Vice* Admission)

---

## PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

Plaintiff Dennis Flueck ("Plaintiff"), by and through his attorneys, Mendenhall Law Group, states the following in support of his Original Complaint and Jury Demand against Defendant T-Mobile USA, Inc., ("Defendant"):

## INTRODUCTION

1.     There is no pandemic exception to the protections afforded by Title VII of the Civil Rights Act of 1964 ("Title VII") or the Ohio Revised Code §4112.02. Defendant clearly did not understand this when it denied Plaintiff's religious accommodation request to be exempt from Defendant's COVID-19 vaccine mandate, despite Plaintiff performing the majority of his job duties remotely prior to termination.

## **PARTIES AND JURISDICTION**

2.     Plaintiff Dennis Flueck is an individual residing in the City of Blue Ash, County of Hamilton, State of Ohio.

3.     Defendant is a wireless communications company headquartered in the City of Bellevue, County of King, State of Washington.

4.     Defendant regularly conducts business in the City of Cincinnati, County of Hamilton, State of Ohio.

5.     Plaintiff's claims arise out of Defendant's violations of Title VII of the Civil Rights Act of 1964 and the Ohio Revised Code §14112.

6.     This Court has federal question jurisdiction over Plaintiff's Title VII claims pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343(a)(4) (jurisdiction over Civil Rights claims).

7.     This Court has original diversity jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332 because Defendant is now, and at all times mentioned

was, a corporation duly organized and existing under the laws of Washington, and Plaintiff is now, and at all times mentioned was, a citizen domiciled in the United States in the State of Ohio.

8.     This Court has supplemental jurisdiction over Plaintiff's Ohio Revised Code claims pursuant to 28 U.S.C. § 1367.

9.     Venue is proper in the Southern District of Ohio because this is the judicial district in which the unlawful employment practice is alleged to have been committed.  42 U.S.C. § 2000e-5(f)(3).

10.     Plaintiff filed a charge of religious discrimination and retaliation with the EEOC and received a "Right to Sue" letter from the EEOC on or about May 10, 2023.

## FACTUAL ALLEGATIONS

11.     Defendant hired Plaintiff as an Account Executive, Business Sales.

12.     Plaintiff would go on to be promoted to Senior Account Executive, Business Sales in or about February 2020.

13.     Shortly thereafter, Plaintiff began working remotely.

14.     Plaintiff was successful in his new role and was subsequently interviewed for another promotion.

15.     In or about September 2021, Plaintiff was once again promoted, this time to Enterprise Account Executive.

16.     Plaintiff earned his second promotion while working remotely.

17.     Defendant announced its vaccine mandate in September 2021.

18.     Defendant's COVID-19 vaccine mandate required certain employees, including Plaintiff, to become fully vaccinated against COVID-19.

19.     Defendant's COVID-19 vaccine mandate expressly stated that requests for religious and medical accommodations would be taken under consideration.

20.     Plaintiff seeks to make daily decisions, including those involving his vaccination status and other medical decisions, through prayer and reading scripture.

21.     On or about September 7, 2021, Plaintiff submitted his Request for Religious Accommodation to Defendant.

22.     Plaintiff indicated on his Request for Accommodation of Sincerely Held Religious Belief form that he requested to continue working remotely, and to wear a mask where required, and noting that he "worked in this role remotely and worked with customers in person without any issues for the last 18 months."

23.     Plaintiff's Request for Accommodation further stated, in pertinent part:

> The Bible teaches that God created human beings in his image (Genesis 1:26-27) This means that human life is sacred and God created the human body and its human immune system to function as he created it. The Bible also teaches that human life begins at conception (Psalm 139:13-16) Therefore, abortion is the taking of a human life and is murder and forbidden by God. (Exodus 20:13).

24.     Plaintiff's Request for Accommodation was accompanied by a letter in support of his request from Reverend Ronald Jones, of the Titus Institute.  That letter stated, in pertinent part:

> I am writing on behalf of Denny Flueck II, a Christian seeking a religious exemption for them Covid-19 Vaccines based on the following Christian beliefs which we share as Christians. As an ordained Christian minister who has taught the Bible for over forty years, both in full -time pastoral ministry and a non-profit Christian ministry on the Internet, it is clear that the Covid-19 vaccines violate God's will revealed in the Bible.
>
> The Bible clearly teaches human beings are made in the image of God (Genesis 1:26) and thus human life is sacred. The Bible also teaches that human life begins at conception (Psalm 139:13-16) and murder is the taking of a human life (Exodus 20:13) Abortion is murder. Any vaccine that uses fetal cell lines in the process of development, confirmation, and/or production of the vaccines we oppose. They are dependent upon the cells of murdered babies which we believe is forbidden by God.
>
> Genesis 1:26 also teaches that God created the human body and its human immune system to function as he created it. The Covid-19 vaccines are not like the traditional vaccines which inserted into the human body a weakened form of the virus and activated the immune system to function as God created it to function. The "new technology" of the Covid-19 vaccines insert genetic code instructions into the cell to direct it to make spike proteins. This interferes with the function of the human immune system. God's intent was for the DNA within a person's body in a cell nucleus to give genetic code instructions not anything outside the cell. Therefore, this process is a violation of God's will for humanity.

25.    After Plaintiff submitted his request for religious accommodation, Defendant directed Plaintiff to continue working remotely.

26.    Defendant required Plaintiff to complete a Religious Accommodation Questionnaire that contained fifteen questions including questions about Plaintiff's prior over-the-counter medication use.

27.    Notably, an employee's prior use of certain medicines cannot be dispositive when evaluating the sincerity of his or her religious beliefs.  See *Thomas v. Review Bd. Of Ind. Employment Sec. Div.*, 450 U.S. 707, 714 (1981).

28.    Plaintiff received no response from Defendant and no interactive process took place. Rather, Defendant's Accommodations Team would unilaterally and arbitrarily reach a final decision regarding Plaintiff's request for accommodation.

29.    In late October 2021, Defendant's managers verbally told its employees who filed requests for accommodation that they were "good to go," which deterred Plaintiff from analyzing the verbiage of Defendant's "back to work approval."

30.    On or about December 22, 2021, Defendant informed Plaintiff that he would be expected to return to the office by February 15, 2022.

31.    The Accommodations Team did not, in fact, notify Plaintiff regarding its decision on his Request for Accommodation until months later, on or about February 8, 2022, when Defendant informed Plaintiff that his Request for

Accommodation was denied on the basis that Defendant could not accommodate his request to work remotely.

32.     Despite claiming that it could not accommodate his request to work remotely, Defendant allowed Plaintiff to continue working remotely while a separate medical accommodation request remained under consideration.

33.     Based on this notice, Plaintiff asked Mark Meier if Plaintiff was able to resubmit his religious accommodation requested in conjunction with Defendant's updated guidelines.

34.     Mr. Meier informed Plaintiff that this would not be possible.

35.     Plaintiff then reached out to Human Resources Partner Carly Schmidt and inquired about the possibility of resubmission.

36.     Ms. Schmidt informed Plaintiff that he was free to resubmit his request; however, she also informed Plaintiff that Defendant would not be approving accommodation requests going forward.

37.     Defendant placed Plaintiff on unpaid leave on or about March 28, 2022.

38.     With no discussion of possible accommodations, Plaintiff found himself in the horrible position of having to choose between his faith and his job. See *Sambrano v. United Airlines, Inc.*, 19 F.4th 839, 841 (5th Cir. 2021) ("Forcing individuals to choose between their faith and their livelihood imposes an obvious and substantial burden on religion.")

39. Defendant ultimately terminated Plaintiff on or about April 4, 2022, based on discrimination against his religious beliefs that prevented him from being vaccinated.

## I. Defendant discriminated against Plaintiff on the basis of his sincerely held religious beliefs.

40. Other employees of Defendant with different religious beliefs were allowed to continue working despite being unvaccinated.

41. Defendant immediately replaced some terminated employees whose requests for religious accommodation were denied with replacement employees who did not possess religious beliefs that conflicted with Defendant's vaccine mandate.

42. Defendant carved out job exceptions to the vaccine mandate it imposed, clearly demonstrating the entirely arbitrary nature of the vaccine mandate. These exceptions included:

- Associate Field Tech

- Field Technician

- Senior Field Technician

- Retail Mobile Experts

- Intern, Retail

- Mobile Associate

- Mobile Associate, Bilingual

- Mobile Expert

- Mobile Expert, Bilingual

- P-Mobile Associate

- P-Mobile Expert

- Signature Mobile Expert

- Signature Mobile Expert PT

- Signature Merchandising & Ops Expert

- Signature Merchandising & Ops Expert PT

- Sr Signature Merchandising & Ops Expert

- Mobile Event Expert

- Mobile Event Expert, Bilingual

- P-Mobile Event Expert

- Mobile Expert, Metro

- Mobile Expert, Metro, Bilingual

- Mobile Expert, Specialized

- Operations Expert, Specialized

- V-Mobile Expert

- V-Mobile Associate

- Retail Operations Specialist

- P-Retail Operations Specialist

- Mobile Event Expert-D

- Expert, Retail Sales Experience

- Hometown Expert

43.    Many of these roles could not have been performed remotely, contrary to Plaintiff's role.  In specifying the roles that could not be performed remotely, Defendant tacitly admits that Plaintiff's role could and was performed remotely without issue, and that doing so would not present an undue hardship to Defendant.

44.    In the process of denying Plaintiff's Request for Accommodation, Defendant failed to sufficiently consider Plaintiff's proposed accommodations to its COVID-19 vaccine mandate.

45.    Defendant did not supply Plaintiff with satisfactory explanations for denying his Request for Accommodation, especially considering that Plaintiff had been working remotely since the onset of the COVID-19 pandemic in early 2020.

46.    "Forcing individuals to choose between their faith and their livelihood imposes an obvious and substantial burden on religion . . . vaccine mandates . . . present[] a crisis of conscience for many people of faith.  It forces them to choose between the two most profound obligations they will ever assume – holding true to their religious commitments and feeding and housing their children.  To many, this is the most horrifying of Hobson's choices." *Sambrano v. United Airlines, Inc.*, 19 F.4th 839, 841 (5th Cir. 2021).

47.    Defendant has no "satisfactory explanation for its actions including a 'rational connection between the facts found and the choice made.'" *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962).

48.    Plaintiff, largely a remote employee for Defendant prior to his termination, posed no risk to spread COVID-19 to Defendant's other employees.

49.    With no substantive criteria to justify its denial of Plaintiff's request, Defendant discriminated against Plaintiff based on his spirituality.

50.    The sincerity of Plaintiff's religious beliefs is not supposed to be open to question.  *See Equal Emp. Opportunity Comm'n v. Publix Super Markets, Inc.*, 471 F. Supp. 3d 684, 699 (M.D. Tenn. 2020); *citing United States v. Seeger*, 380 U.S. 163, 185 (1965) ("[T]he truth of a belief is not open to question.")

51.    Moreover, "[a]s long as a party's beliefs are religiously asserted, it is not for the courts to challenge the truthfulness of such assertions simply because they developed 'from revelation, study, upbringing, gradual evolution, or some source that appears entirely incomprehensible.'" *E.E.O.C. v. Alliant Techsystems, Inc.*, No. CIV.A. 98-0084-R, 1998 WL 777015, at *6 (W.D. Va. Sept. 18, 1998) (*quoting Hobbie v. Unemployment Comm'n of Fla.*, 480 U.S. 136, 144 n. 9 (1987)).

52.    The sincerity of Plaintiff's religious beliefs is further supported by his steadfast refusal to vaccinate against COVID-19 even after Defendant attempted to force Plaintiff to vaccinate himself to avoid losing his job.

**Defendant Violated EEOC Guidance**

53.    On March 1, 2021, the EEOC expanded its guidance on religious exemption to employer vaccine mandates under Title VII of the Civil Rights Act of 1964 ("Guidance").  This Guidance describes in greater detail the framework under which the EEOC advises employers to resolve religious accommodation requests. *See* Guidance, *supra*.

54.    The EEOC emphasizes that as a reasonable accommodation, an unvaccinated employee entering the workplace might wear a face mask, work at a social distance from coworkers or non-employees, work a modified shift, get periodic tests for COVID-19, be provided the opportunity to telework, or finally, accept a reassignment.  *Id.* At K.2.

55.    The EEOC states that an employer cannot rely on speculative hardships when faced with an employee's religious objection but, rather, should rely on objective information.  *Id.* at L.3.

56.    The EEOC states that, in many circumstances, it may be possible to accommodate those seeking reasonable accommodations for their religious beliefs, practices, or observances without imposing an undue hardship.  *Id.* at K.12.

57.    The EEOC instructs, "[i]f the employer denies the employee's proposed accommodation, the employer should explain to the employee why the preferred accommodation is not being granted."  *Id.* at L.5.

58.     "[T]he definition of religion is broad and protects beliefs, practices, and observances with which the employer may be unfamiliar." *Id.* at K.12.

59.     "The definition of 'religion' under Title VII protects both traditional and nontraditional religious beliefs, practices, or observances, including those that may be unfamiliar to employers." *Id.* at L.2.

60.     "The employer should ordinarily assume that an employee's request for religious accommodation is based on sincerely held religious belief, practice, or observance." *Id.* at K.12.

61.     "Employers should evaluate religious objections on an individual basis." *Id.* at L.2.

62.     The EEOC states:

An individual's beliefs – or degree of adherence – may change over time and, therefore, an employee's newly adopted or inconsistently observed practices may nevertheless be sincerely held. An employer should not assume that an employee is insincere simply because some of the employee's practices deviate from the commonly followed tenants of the employee's religion, or because the employee adheres to some common practices but not others. *Id.* at L.2.

63.     "An employer should thoroughly consider all possible reasonable accommodations." *Id.* at K.12.

64.     The EEOC states that factors which could "undermine an employee's credibility include" the following:

a.　　Whether the employee has acted in a manner inconsistent with the professed belief (although employee need not be scrupulous in their observance);

b.　　Whether the accommodation sought is a particularly desirable benefit that is likely to be sought for nonreligious reasons;

c.　　Whether the timing of the request renders it suspect (for example, it follows an earlier request by the employee for the same benefit for secular reasons); and

d.　　Whether the employer otherwise has reason to believe the accommodation is not sought for religious reasons.

*Id.* at K.12.

65.　　In most circumstances, it is possible to accommodate religious beliefs "without imposing an undue hardship." *Id.* at L.3.

**Defendant Cannot Establish Undue Hardship**

66.　　Pursuant to Title VII, the prohibition against religious discrimination imposes an affirmative duty on employers to reasonably accommodate the religious observances and practices of its employees, unless the employer can demonstrate that such an accommodation would cause undue hardship to the conduct of its business. *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1977).

67. "The obligation to provide religious accommodations absent undue hardship is a continuing obligation that allows for changing circumstances." Guidance at L.6.

68. Defendant bears the burden to show "that it is unable to reasonably accommodate an employee's religious beliefs without incurring undue hardship." *McDaniel v. Essex Intern., Inc.*, 571 F.2d 338, 341 (6th Cir. 1978); *see also Baz v Walters*, 782 F.2d 701, 706 (7th Cir. 1986); *Redmond v, GAF Corp.*, 574 F.2d 897, 901 (7th Cir. 1978); *EEOC v. Hacienda Hotel*, 881 F.2d 1504, 1512 (9th Cir. 1989).

69. In the instant case Defendant cannot show undue hardship. To date, Defendant has provided insufficient reasoning as to why granting Plaintiff's accommodation would have posed an undue hardship.

70. Defendant has not disclosed its criteria for determining whether an accommodation poses an undue hardship.

71. An employer does not satisfy its burden "merely by showing that an accommodation would be bothersome to administer." *Draper v. United States Pipe & Foundry Co.*, 527 F.2d 515, 520 (6th Cir. 1975).

72. Without a proffered explanation as to why Defendant would endure undue hardship to accommodate Plaintiff individually, Defendant relies on hypothetical hardships by default.

73.    "A claim of undue hardship cannot be supported by merely conceivable or hypothetical hardships; instead, it must be supported by proof of actual imposition on co-workers or disruption of the work routine." *Townley Eng'g & Mfg. Co.*, 859 F.2d at 615 (9th Cir. 1988).

74.    "An employer cannot rely on speculative or hypothetical hardship when faced with an employee's religious objection, but, rather, should rely on objective information." Guidance at L.3.

75.    Defendant's actions demonstrate a motive to avoid granting religious accommodations.

76.    "[A]n employer who acts with the motive of avoiding accommodation may violate Title VII even if [it] has no more than an unsubstantiated suspicion that accommodation would be needed." *Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 773, 135 S. Ct. 2028, 2033, 192 L. Ed. 2d 35 (2015).

## COUNT I
## VIOLATION OF TITLE VII, 42 U.S.C. § 2000e, *et seq.*
## RELIGIOUS DISCRIMINATION—FAILURE TO ACCOMMODATE & DISPARATE TREATMENT

77.    Plaintiff restates the foregoing paragraphs as set forth fully herein.

78.    Title VII prohibits an employer from discriminating against an employee "because of such individual's . . . religion. 42 U.S.C. § 2000e-2(a)(1).

79.    Title VII's definition of "religion" includes "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j).

80.    Plaintiff can easily establish a *prima facie* case of discrimination by showing (1) Plaintiff holds sincere religious beliefs that conflict with Defendant's employment requirement; (2) Plaintiff informed Defendant of the same; and (3) Defendant disciplined Plaintiff for failing to comply with an employment requirement. *Yeager v. FirstEnergy Generation Corp.*, 777 F.3d 362, 363 (6th Cir. 2015).

81.    Plaintiff holds sincere religious beliefs that conflict with Defendant's vaccine mandate.

82.    Plaintiff informed Defendant how his sincerely held religious beliefs conflicted with Defendant's vaccine mandate.

83.    Plaintiff was disciplined for failing to comply with Defendant's vaccine mandate.

84.    Defendant evaded any sort of "bilateral cooperation," *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986), when it placed Plaintiff on unpaid suspension and ultimately terminated him.

85.    Defendant could have offered Plaintiff multiple reasonable accommodations without undue hardship including, but not limited to sanitizing, disinfecting, handwashing, respirator-wearing, masking, and regular testing.

86.    Defendant never explained why it could not accommodate Plaintiff.

87. Defendant never explained why there was no reasonable accommodation available.

88. Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, embarrassment, and the physical effects associated therewith because of Defendant's denial of Plaintiff's request for accommodation and subsequent termination, and he will so suffer in the future.

89. Plaintiff has been denied employment and placed in financial distress and has suffered a loss of earnings and benefits, loss of health insurance coverage, and a loss of and impairment of his earning capacity and ability to work because of Defendant's denial of Plaintiff's request for accommodation and termination.

90. Plaintiff has been required to employ the services of an attorney.

91. Defendant's actions were intentional and/or reckless.

92. Unpaid suspension is not a religious accommodation.

93. Termination is not a religious accommodation.

## COUNT II
## VIOLATION OF OHIO REVISED CODE §4112.02, *et seq.*
## RELIGIOUS DISCRIMINATION—FAILURE TO ACCOMMODATE & DISPARATE TREATMENT

94. Plaintiff restates the foregoing paragraphs as set forth fully herein.

95. Ohio Revised Code Section 4112.02 prohibits employment discrimination based on religion.

96.    Plaintiff holds sincere religious beliefs that conflict with Defendant's COVID-19 vaccine mandate.

97.    Plaintiff informed Defendant how his sincerely held religious belief conflicted with Defendant's COVID-19 vaccine mandate.

98.    Defendants violated Ohio's Anti-Discrimination law when they terminated Plaintiff due to her religious objections to COVID-19 vaccination.

99.    Defendant could have offered Plaintiff several reasonable accommodations without encountering an undue hardship, including sanitizing, disinfecting, handwashing, respirator-wearing, masking, and regular testing.

100.    Defendant never explained why Plaintiff could not be accommodated.

101.    Defendant never explained to Plaintiff why there were no reasonable accommodations available.

102.    "To assert a successful claim of religious discrimination . . . a plaintiff must either present direct evidence of discrimination, or, in the absence of direct evidence, present a prima facie case of indirect discrimination by showing (1) that he was a member of a protected class, (2) that he experienced an adverse employment action (3) that he was qualified for the position, and (4) that he was replaced by a person outside of the protected class or that he was treated differently than similarly situated employees." *Tepper v. Potter*, 505 F.3d 508, 515 (6th Cir. 2007).

103.   Plaintiff's sincerely held religious beliefs qualify him as a member of a protected class.

104.   Defendant placed Plaintiff on unpaid suspension before ultimately terminating him.

105.   Plaintiff was qualified for his position.

106.   Plaintiff was treated differently than similarly situated employees.

107.   Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, embarrassment, and the physical effects associated therewith because of the denial of their requests, and he will so suffer in the future.

108.   Plaintiff has been denied employment and placed in financial distress and suffered a loss of earnings and benefits, a loss of health insurance coverage, and a loss of and impairment of his earning capacity and ability to work because of the denial of their requests.

109.   Plaintiff has been required to employ the services of an attorney as a result.

110.   Defendant's actions were intentional and/or reckless.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests the following relief:

a.     Compensatory damages for monetary and non-monetary loss;

b.      Exemplary and punitive damages;

c.      Prejudgment interest;

d.      Reasonable attorney's fees; and

e.      Such other relief as law or equity may pertain.

                        Respectfully submitted,

                        MENDENHALL LAW GROUP

                        */s/ Warner Mendenhall*
                        Warner Mendenhall (0070165)
                        *Attorney for Plaintiff*

Dated: July 31, 2023

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

DENNIS FLUECK,

       Plaintiff,                             Case No. 1:23-cv-486

v.                                        Hon.
                                           Mag.

T-MOBILE USA, INC.,

       Defendant.

---

Warner Mendenhall (0070165)
Mendenhall Law Group
Attorneys for Plaintiff
190 North Union St., Suite 201
Akron, OH 44304
330.535.9160; f 330.762.9743
warner@warnermendenhall.com

---

## DEMAND FOR TRIAL BY JURY

      Plaintiff Dennis Flueck, by and through his attorneys, Mendenhall Law Group, hereby demands a trial by jury in the above-captioned matter for all issues so triable.

                                     Respectfully submitted,

                                     MENDENHALL LAW GROUP

                                     */s/ Warner Mendenhall*
                                       Warner Mendenhall (0070165)
                                       *Attorney for Plaintiff*

Dated: July 31, 2023